UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KENNETH HINTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-1726 (CKK) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on defendant's motion to dismiss or, alternatively, for summary judgment and plaintiff's opposition thereto. For the reasons discussed below, the Court will deny defendant's motion to dismiss, and will grant in part and deny in part defendant's summary judgment motion.

### I. BACKGROUND

Plaintiff brings this action under the Federal Tort Claims Act ("FCTA"), *see* 28 U.S.C. §§ 2671-80, against the United States of America, and his claims arise from medical treatment rendered by two ophthalmologists employed by Unity Health Care, Inc. ("UHC") while plaintiff was incarcerated at the District of Columbia's Central Detention Facility ("D.C. Jail").[1] *See*

---

[1] At all times relevant to the complaint, UHC was considered an employee of the Public Health Service for purposes of the FTCA. Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss the Compl. or, Alternatively, for Summ. J., Ex. D-E (respectively, December 19, 2005, and December 18, 2006 letters from A.M. Snyder, Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration, U.S. Department of Health and

(continued...)

1

Compl. ¶¶ 2-3, 7. Plaintiff alleges that Dr. Marc Berry examined his eyes on November 15, 2006, prescribed eyeglasses, and told him that he would receive his eyeglasses in four to six weeks. *Id.* ¶¶ 8-9. He further alleges that he did not receive his eyeglasses after waiting more than six weeks, and subsequently Dr. Jualenda Boschulte examined his eyes on July 9, 2007. *Id.* ¶ 10. Dr. Boschulte, too, prescribed eyeglasses for plaintiff, *id.*, but plaintiff alleges that the eyeglasses he received were "not in compliance" with the prescriptions the doctors wrote. *Id.* ¶ 11. Plaintiff demands compensatory damages "for the injuries he has suffered from November 15, 2006 and August 16, 2007 when [UHC] failed to provide [him] with his prescription glasses as ordered by the ophthalmologists[.]" *Id.* ¶ 12. He claims to have "developed symptoms of blurred vision[], sore eyes, eye pains, insomnia, cephalagia, fatigue and [post-traumatic stress disorder]" as a result of UHC's alleged "lack of diligence and medical malpractice." *Id.* ¶ 13; *see id.* ¶¶ 12-18.

Defendant set forth a more detailed sequence of events. Review of the medical chart reveals that, on November 15, 2006, Dr. Berry examined plaintiff's eyes, diagnosed myopia and presbyopia, and prescribed eyeglasses for which plaintiff was to be fitted. Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss the Compl. or, Alternatively, for Summ. J. ("Def.'s Mem."), Ex. F (Chart Summary) at 69-70. Plaintiff was released from the D.C. Jail on December 13, 2006, 28 days after Dr. Berry's examination, to an Arlington County, Virginia detainer. *Id.*, Ex. A (August 27, 2007 Memorandum for J&C File from C.J. Epley, Classification Computation

---

[1](...continued)
Human Services, certifying malpractice liability coverage for UHC for calendar years 2006 and 2007). The FTCA, then, offers plaintiff's sole remedy against the United States for a claim against a UHC officer or employee whose act or omission gave rise to the claim. *See* 42 U.S.C. § 233(g).

Specialist, Designation & Sentence Computation Center, Federal Bureau of Prisons). "Because [plaintiff] was released . . . on December 13, 2006, he was unable to be fitted for eyeglasses prior to his release." *Id.*, Ex. B (Narrative of Jualenda Boschulte, M.D.) at 1. Plaintiff was returned to the D.C. Jail on April 3, 2007, *id.*, Ex. A, at which time he underwent a medical examination, *id.*, Ex. F at 71-76. On April 23, 2007, plaintiff complained to medical staff that he needed eyeglasses, and he requested an appointment for an eye examination. *Id.*, Ex. F at 79-80. On June 4, 2007, Dr. Boschulte evaluated plaintiff, at which time he reported that he had not received the eyeglasses prescribed in November 2006.[2] *Id.*, Ex. B at 1. Dr. Boschulte diagnosed "a minor refractive error and recommended him for eyeglass fitting." *Id.*; *see id.*, Ex. F at 83-84. The fitting took place on July 9, 2007, *id.*, Ex. B at 1, and Dr. Boschulte ordered the eyeglasses on July 10, 2007, *id.* Plaintiff received the eyeglasses either on August 6, 2007, *id.*, or on August 16, 2007, Compl. ¶ 11, prior to his transfer to federal custody on August 22, 2007. Def.'s Mem., Ex. B at 1.

## II. DISCUSSION

### A. *Dismissal Under Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits;

---

[2] The medical chart indicates that, on June 4, 2007, plaintiff "came for [the] glasses ordered in [November] 2006," and that he "[did] not want [an] eye exam." Def.'s Mem., Ex. F at 84.

rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555. Or as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).

Defendant argues that plaintiff fails to state a claim under the FTCA, Def.'s Mem. at 8-10, because UHC owed plaintiff no duty of care prior to Dr. Boschulte's examination on June 4, 2007, *id.* at 8. Defendant maintains that UHC was unable to provide plaintiff's eyeglasses following Dr. Berry's examination through no fault of its own – plaintiff's release from the D.C. Jail – and, therefore, it had no duty to provide him continuing care between December 13, 2006 and his return to custody. *See id.* at 8-9. In the alternative, defendant argues that "[p]laintiff's account of the causation of his claimed injuries is "facially implausible." *Id.* at 10. According to defendant, plaintiff alleges that he suffered injuries only from November 15, 2006 until August 16, 2007, the day he received his eyeglasses, *id.*, and dismisses this proposition as "simply absurd." *Id.*

Plaintiff counters that "[t]here is no reason why the Court should not accept [p]laintiff's contentions within the Complaint [because he] has clearly stated a claim." Pl.'s Opp'n at 4. He

4

argues that the Court "can and should draw the reasonable inference that [d]efendant is liable to [p]laintiff for the alleged misconduct because [d]efendant did not directly refute many of [p]laintiff's contentions." *Id.*

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other citations omitted). In addition, the Court must liberally construe the allegations of a *pro se* litigant's complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Careful review of the complaint satisfies the Court that plaintiff adequately alleges that UHC owed plaintiff a duty, that UHC breached that duty, thereby causing the alleged injuries set forth in the pleading. Defendant's motion to dismiss will be denied.

B. *Summary Judgment Under Rule 56*

1. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If material facts are at issue, or, though undisputed, are susceptible

5

to divergent inferences, summary judgment is not available." *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) (citing *Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988)); *see Anderson*, 477 U.S. at 248 (stating that summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the nonmoving party "must do more that simply show that there is some metaphysical doubt as to the material facts"); *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

2. Plaintiff's Release from the D.C. Jail in December 2006

In his complaint, plaintiff alleges that the eyeglasses he was given were not the proper prescription, Compl. ¶ 11, causing him to suffer blurred vision, pain, and other physical and psychological harms, *id.* ¶¶ 12-13. In his opposition to defendant's motion, plaintiff asserts that Dr. Berry was aware of plaintiff's December 2006 release date and was to have expedited the fitting for the eyeglasses. Pl.'s Opp'n at 4. Plaintiff does not point to any evidence in the record to support these contentions, and furthermore, these contentions are inconsistent with the complaint. Plaintiff was told that "he would receive his prescription eyeglasses within four to six weeks," Compl. ¶ 9, and plaintiff's release from custody 28 days after Dr. Berry's examination meant that the eyeglasses could not be furnished within this time frame.

6

Accordingly, the Court will grant defendant's summary judgment motion in part. Nothing in the record supports the proposition that UHC was obligated to provide medical care plaintiff while he was not in the District's custody, and plaintiff's claim arising from a delay in receiving his eyeglasses because of his release from custody fails.

### 3. Causation as an Element of a Negligence Claim

"The FTCA waives sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)). Accordingly, the law of the District of Columbia applies in this case. *See Kugel v. United States*, 947 F.2d 1504, 1508 (D.C. Cir. 1991) (concluding that the plaintiff could not bring a false light claim under the FTCA because this tort was not recognized under the law of North Carolina, the state where the alleged acts or omissions occurred); *Ross v. United States*, 591 F. Supp. 2d 48, 52 (D.D.C. 2008) (applying the law of Guam to an FTCA claim arising from surgery performed by United States Navy personnel at the United States Naval Hospital in Guam).

"The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." *N.O.L. v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1996); *see Gilbert v. Miodovnik*, 990 A.2d 983, 988 (D.C. 2010) ("In order to defeat a properly-supported motion for summary judgment in an action for medical malpractice, the plaintiff must present a prima facie case establishing the applicable standard of care, showing that the standard of care has been violated, and demonstrating a causal connection between the

violation and the damage suffered."). Because these issues are "distinctly related to some science, profession, or occupation, . . . expert testimony is usually required to establish each of the elements[.]" *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 181 (D.C. 1990) (citations omitted); *see Snyder v. George Washington Univ.*, 890 A.2d 237, 244 (D.C. 2006) (finding that expert testimony was required in a medical malpractice case, the principal theory of which was that the hospital "failed to timely diagnose and treat [the decedent's] internal bleeding, resulting in a hematoma (or pooling of blood) around his spinal cord that damaged his spinal tissue, causing his paralysis and subsequent loss of limbs"); *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988).

On the current record, there remain genuine issues of material fact in dispute, among which are whether the eyeglasses plaintiff received contained the proper prescription, and whether UHC's acts or omission either caused plaintiff's eyesight to deteriorate or caused the other injuries plaintiff allegedly has suffered. These appear to be matters beyond the scope of a lay person's understanding for which expert testimony may be required.

Plaintiff contends that "it is necessary for [him] to engage the process of discovery," Pl.'s Opp'n at 5, so that he can prove, among other things, that the eyeglasses he received in August 2007 "were not in harmony with the prescription initially ordered by Dr. B[e]rry," *id.*, and that "the eyeglasses did not ameliorate [his] blurred vision," *id*. To this end, plaintiff proposes to take Dr. Berry's deposition . *Id.*

Although plaintiff could have filed a motion under Rule 56(f) to request a continuance in order that discovery be undertaken before filing an opposition to defendant's motion, he did not do so. However, because plaintiff is a *pro se* litigant, the Court declines to apply the rules as

8

strictly as it might if plaintiff were represented by counsel. For this reason, the Court will deny defendant's summary judgment motion in part and without prejudice to renewing the motion after such time as the parties have an opportunity to engage in discovery.[3]

### III. CONCLUSION

The Court will deny defendant's motion to dismiss, as the allegations of plaintiff's complaint adequately state a claim for purposes of the FTCA, and will grant defendant's motion for summary judgment in part with respect to plaintiff's claim arising from a delay in receipt of his eyeglasses due to his release from the D.C. Jail on December 16, 2006. In all other respects, defendant's summary judgment motion is denied without prejudice. An Order is issued separately.

COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE: June 2, 2010

---

[3] Also before the Court is defendant's motion for a protective order staying discovery. In light of the Court's resolution of defendant's dispositive motion, further proceedings, including discovery, are contemplated. The Court will grant the motion, and the parties shall not engage in formal discovery pending further order of the Court. Defendant is not obligated to respond to the requests for admissions, *see* Def.'s Reply to Pro Se Pl.'s Opp'n to Def.'s Mot. for Protective Order Staying Discovery, Ex. 1, at this time.