UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
KENNETH HINTON,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )   Civil Action No.   09-1726   (RLW)
                                   )
UNITED STATES OF AMERICA,          )
                                   )
            Defendant.             )
_____)

**MEMORANDUM OPINION**

This matter is before the Court on defendant's motion for summary judgment or, alternatively, to stay discovery. For the reasons discussed below, the motion for summary judgment will be granted.

I. BACKGROUND

Plaintiff brings this action under the Federal Tort Claims Act ("FCTA"), *see* 28 U.S.C. §§ 2671-80, against the United States of America. His claims arise from medical treatment rendered by two ophthalmologists employed by Unity Health Care, Inc. ("UHC") while plaintiff was in the custody of the District of Columbia Department of Corrections ("DOC").[1]

From October 22, 2006 through December 13, 2006, plaintiff was incarcerated at the District of Columbia's Central Detention Facility ("D.C. Jail"). Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss the Compl. or, Alternatively, for Summ. J. ("Def.'s Mem.") [Dkt. #10], Ex.

---

[1] At all times relevant to the complaint, UHC was considered an employee of the Public Health Service for purposes of the FTCA. Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss the Compl. or, Alternatively, for Summ. J., Ex. D-E.

A (Memorandum for J&C File from C.J. Epley, Classification Computation Specialist, Designation & Sentence Computation Center, Federal Bureau of Prisons, dated August 27, 2007). On November 15, 2006, Dr. Marc Berry examined plaintiff's eyes, diagnosed myopia and presbyopia, and prescribed eyeglasses for which plaintiff was to be fitted. *Id.*, Ex. F (Chart Summary) at 69-70. Plaintiff was released from the D.C. Jail on December 13, 2006, 28 days after Dr. Berry's examination, to an Arlington County, Virginia detainer. *Id.*, Ex. A. "Because [plaintiff] was released . . . on December 13, 2006, he was unable to be fitted for eyeglasses prior to his release." *Id.*, Ex. B (Narrative of Jualenda Boschulte, M.D.) at 1.

Between December 14, 2006 and April 2, 2007, plaintiff was not in DOC custody or under UHC care. Plaintiff was returned to the D.C. Jail on April 3, 2007, Def.'s Mem., Ex. A, at which time he underwent a medical examination, *id.*, Ex. F at 71-76. On April 23, 2007, plaintiff complained to medical staff that he needed eyeglasses, and he requested an appointment for an eye examination. *Id.*, Ex. F at 79-80. On June 4, 2007, Dr. Boschulte evaluated plaintiff, at which time plaintiff reported that he had not received the eyeglasses prescribed by Dr. Berry in November 2006. *Id.*, Ex. B at 1. Dr. Boschulte diagnosed "a minor refractive error and recommended him for eyeglass fitting." *Id.*, Ex. B at 1; *see id.*, Ex. F at 83-84. The fitting took place on July 9, 2007, and Dr. Boschulte ordered the eyeglasses on July 10, 2007. *Id.*, Ex. B at 1; *see id.*, Ex. F at 94. Plaintiff received the eyeglasses either on August 6, 2007, *id.,* Ex. B at 1, or on August 16, 2007, Compl. ¶ 11, prior to his transfer to federal custody on August 22, 2007, Def.'s Mem., Ex. B at 1.

According to plaintiff, the eyeglasses he received were "not in compliance" with the prescriptions the doctors wrote, Compl. ¶ 11, causing him to experience "blurred vision, sore eyes,

2

eye pains, insomnia, cephala[l]gia, fatigue and [post-traumatic stress disorder]," *id.* ¶ 15, as a result of UHC's alleged "lack of diligence and medical malpractice," *id.* ¶ 13. Further, he has asserted that the eyeglasses given to him "facilitated or promoted the deterioration of [his] vision as well as exacerbated [his] mental anguish, anxiety . . . and other medical discomfort." Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. or, Alternatively, to Stay Discovery ("Pl.'s Opp'n") at 3. He has demanded compensatory and punitive damages totaling $2 million. Compl. ¶¶ 13, 18.

The Court granted in part and denied in part defendant's first dispositive motion, noting the existence of genuine issues of material fact precluding summary judgment at that time:

> On the current record, there remain genuine issues of material fact in dispute, among which are whether the eyeglasses plaintiff received contained the proper prescription, and whether UHC's acts or omission either caused plaintiff's eyesight to deteriorate or caused the other injuries plaintiff allegedly has suffered. These appear to be matters beyond the scope of a lay person's understanding for which expert testimony may be required.

*Hinton v. United States*, 714 F. Supp. 2d 157, 162 (D.C. 2010). On July 27, 2010, the Court issued a Scheduling and Procedures Order which, among other deadlines, required the parties to provide expert witness reports pursuant to Fed. R. Civ. P. 26(a)(2) by October 18, 2010. Dkt. #31 at 6. On plaintiff's motion, the Court extended this deadline to November 18, 2010. Minute Order dated October 25, 2010. Defendant has renewed its motion for summary judgment, arguing that, "[w]ithout expert testimony, Plaintiff cannot, as a matter of law, make out a <u>prima facie</u> case of negligence and cannot prove his claims of medical malpractice." Def.'s Mem. of P. & A. in Supp. of its Renewed Mot. for Summ. J, or, Alternatively to Stay Disc. ("Def.'s Renewed Mem.") at 1.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law," and further, a court will consider a dispute as genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A party opposing summary judgment "is obligated to produce affirmative evidence supporting the challenged aspects of his claims by affidavit or other competent evidence." *Mulhern v. Gates*, 525 F. Supp. 2d 174, 186 (D.D.C. 2007). He must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot create a genuine dispute by relying on conclusory assertions without any factual basis in the record. *See Ass'n of Flight Attendants– CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). "Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by [his] own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) (citations omitted).

### B. *Prima Facie Negligence Claim*

"The FTCA waives sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)). Under District of Columbia law, a "plaintiff

in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (internal quotation marks and citations omitted); *see also N.O.L. v. District of Columbia,* 674 A.2d 498, 499 (D.C. 2010) ("The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence."). To withstand a defendant's motion for summary judgment in a medical malpractice case, "the plaintiff must present a prima facie case establishing the applicable standard of care, showing that the standard of care has been violated, and demonstrating a causal connection between the violation and the damage suffered." *Gilbert v. Miodovnik*, 990 A.2d 983, 988 (D.C. 2010).

Expert testimony is not required if the alleged negligence falls "within the realm of common knowledge and everyday experience." *Matthews v. District of Columbia,* 387 A.2d 731, 735 (D.C. 1978). A prima facie case of negligence predicated on medical malpractice, however, involves issues "distinctly related to some science, profession, or occupation," *District of Columbia v. Peters,* 527 A.2d 1269, 1273 (D.C.1987), such that "expert testimony is usually required to establish each of the elements[.]" *Psychiatric Inst. of Washington v. Allen*, 509 A.2d 619, 624 (D.C. 1986); *see Eibl v. Kogan*, 494 A.2d 640, 643 (D.C. 1985) (per curiam) (finding that expert testimony was required in malpractice case arising from plaintiff's exposure "to a complex invasive procedure which required the application of both professional experience and highly technical equipment").

Plaintiff asserts that "[t]here is facial plausibility in [his] complaint," such that the Court

"can and should draw the reasonable inference that [d]efendant is liable . . . for the alleged misconduct." Pl.'s Opp'n at 4. He points to defendant's failure to "directly refute many of [his factual] assertions," *see id.,* and relies solely on his own statements to support his claim. *See generally id.*, Ex. A (Statement of Claim dated April 10, 2008) & Pl.'s Aff./Decl. in Opp'n to Def.'s Mot. for Summ. J., or, Alternatively, to Stay Discovery. Although plaintiff does not address the matter of an expert witness, he argues that defendant's motion should be denied in order that he "seek discovery of potentially favorable information" through, for example, the deposition of Dr. Berry. Pl.'s Opp'n at 5. The time for discovery has passed, and at this stage of the proceedings, the burden is on plaintiff to make out his prima facie case of malpractice.

A trier of fact must determine not only the standard of care defendant owed to plaintiff but also whether defendant deviated from it and whether "defendant's negligence is more likely than anything else to have been the cause (or a cause) of the plaintiff's injuries," *Psychiatric Inst. of Washington v. Allen*, 509 A.2d at 624, among which are blurred vision, eye pain and soreness, insomnia, cephalagia, fatigue and post-traumatic stress disorder. These are matters beyond the realm of everyday experience. *Cf. Kling v. Peters*, 564 A.2d 708 (D.C. 1989) (board-certified ophalmologist and eye surgeon testified as expert witness on causation in medical malpractice action brought by patient who lost all vision in one eye). Absent expert testimony to establish the elements of his negligence claim, summary judgment will be granted for defendant. *See Eibl*, 494 A.2d at 643 (affirming grant of summary judgment for defendant where plaintiff failed to name a medical expert).

III. CONCLUSION

Plaintiff has provided no credible evidence from which a reasonable juror could determine

the standard of care defendant owed plaintiff, whether defendant deviated from that standard, or whether defendant's negligence caused plaintiff's injuries. Without expert testimony, plaintiff cannot make out a prima facie case for medical malpractice. Accordingly, the Court will grant summary judgment for defendant. An Order is issued separately.

DATE: July 25, 2011

/s/
ROBERT L. WILKINS
United States District Judge